HUGH J. O'HARA'S (dependent's) CASE.

Suffolk.   November 15, 1923. — February 27, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

ADOLPH BRANDEIS'S CASE.

Suffolk.   November 20, 1923. — February 27, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Jurisdiction*, Admiralty.   *Workmen's Compensation Act*, Injuries to which act applies.

An employee of one insured under the workmen's compensation act, who was injured while employed as a joiner or carpenter and at work on a dry dock moored to piers and floating in navigable waters, building a staging about a seagoing vessel in commission which had come into the dock for repairs, is not entitled to the benefits of the provisions of the workmen's compensation act, the admiralty jurisdiction of the United States courts excluding the operation of the act with reference to such injuries.

An employee of a subcontractor under the proprietor of a dry dock, who was a subscriber under the workmen's compensation act and had contracted with the owners of an ocean-going steamship to make certain repairs upon the ship, was injured while, in the performance of his duties, he was walking on a plank extending from the side of the dry dock to the side of the steamship.   The dry dock rested upon and was attached to the land, and the vessel had been floated into the dock and then water had been pumped from the dock, leaving it of a depth less than the draught of the ship, so that the ship was resting on blocks or the bottom of the dock when the employee was injured.   *Held*, that the employee was not entitled to the benefits of the workmen's compensation act, the admiralty jurisdiction of the United States courts excluding the operation of that act with reference to the injuries so received.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of decisions of the Industrial Accident Board granting compensation to employees working upon or about vessels in dry docks in navigable waters, as described in the opinion.

In the Superior Court, the cases were heard by *Sisk*, J. and by *McLaughlin*, J., respectively.

The first case was heard upon an agreed statement of facts which included, among others, the following facts: The steamship which the claimant's employers were assisting in repairing was the "Absecon, " a vessel engaged in carrying coal for the United States Government. The repairs were " minor . . . necessary to the upkeep of the vessel but not necessitating taking the vessel out of commission." While the repairs were being made, the crew of the steamship were on duty at all times. At the time of the accident to O'Hara, there were ten feet of water in the dry dock. The steamship had a draught of twelve feet six inches. The " dry dock rested upon the land . . . and was attached thereto; that it was partially filled with water of a depth less than the draught of said steamship and that the steamship was resting on blocks or the bottom of said dock at the time of the injury; that the gates of said dock were closed at the time of the injury." Other material facts in O'Hara's Case are described in the opinion.

Material facts appearing in the record in Brandeis's Case are described in the opinion. Final decrees were entered ordering the payment of compensation in accordance with the decisions of the Industrial Accident Board. The respective insurers appealed.

*G. Gleason,* for the insurer in O'Hara's Case.

*F. W. Mansfield,* for the claimant, O'Hara's dependent.

*E. Field,* (*L. Brown* with him,) for the insurer in Brandeis's Case.

*E. B. Cook,* for Brandeis.

RUGG, C.J. These are two cases under the workmen's compensation act. The facts show that the cases are subject to the same controlling principles of law and, although argued separately, they are decided by a single opinion.

Brandeis received injuries in the course of and arising out of his employment by the Bethlehem Shipbuilding Corporation. The general finding of the board was that the employee's claim was within its jurisdiction and not within the exclusive jurisdiction of admiralty. This general finding will be sustained if there is any evidence to support it. *Pass's Case,* 232 Mass. 515. It imports a finding of all sub-

sidiary facts necessary to uphold it so far as justified by the evidence. *Adams* v. *Dick*, 226 Mass. 46, 52.

Brandeis apparently was employed as a joiner or carpenter. He testified that he was at work at the time of his injury on a dry dock, building a staging, that was the work he always did; that he was handing a big plank to a fellow employee and it slipped causing his injury. Other testimony showed that the dry dock was moored to piers and was floating in navigable waters, so that " the ship sails right into it." The vessel in the floating dry dock was a steamship in commission which came into the dock for repairs. In order to make the required repairs, it was necessary to erect a staging on the outside of the vessel within the dry dock. The staging consisted of horses twenty-six feet high, which moved on wheels and which were arranged along the inside of the dock against the side of the ship. Planks were placed on these horses to make the staging continuous around the ship. The claimant when injured was engaged in setting up this staging. These appear to be the facts in their light most favorable to the claimant which on the evidence the board might have found. The employer of Brandeis was insured under the workmen's compensation act.

O'Hara's Case was submitted on an agreed statement of facts in substance as follows: A contract for certain repairs on an ocean-going steamship was made by her owners with the corporate proprietor of a dry dock. The dry dock rested upon and was attached to land. For the performance of the contract it was necessary that the steamship be floated into the dry dock. That had been done and the water had been partly pumped out of the dock at the time of the injury. O'Hara was in the employ of subcontractors, to whom had been let the chipping of the hull, that is, the removal of old paint in preparation for a new coat of paint. While in the performance of his duties, walking on a plank extending from the side of the dry dock to the side of the steamship, he fell, receiving injuries for which compensation is here sought. The proprietor of the dry dock was insured under the workmen's compensation act, but the sub-

contractors by whom the complainant was employed were not so insured. See G. L. c. 152, § 18, *White* v. *George A. Fuller Co.* 226 Mass. 1, and *Bindbeutel* v. *L. D. Willcutt & Sons Co.* 244 Mass. 195.

Both these cases are within the scope of the workmen's compensation act so far as concerns mere matter of verbal construction. That act must be and has been interpreted as operative only upon classes of employment and injury within the jurisdiction of this Commonwealth. It does not extend to " cases of admiralty and maritime jurisdiction," which are exclusively under the control of the United States. U. S. Const. art. 3, § 2, art. 1, § 8. *Gillard's Case,* 244 Mass. 47, 51, 52.

The single question to be decided is whether these injuries are " cases of admiralty and maritime jurisdiction." This is a subject on which decisions by the Supreme Court of the United States constitute the law of the land. Therefore, our only concern is to endeavor to ascertain and apply the governing principles declared by that court.

In the leading case of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, it was held respecting a stevedore injured on a gangway connecting an ocean-going vessel with the pier while helping to unload her cargo, that his work was " maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction." As a necessary consequence it further was held that the New York workmen's compensation law was not operative because the jurisdiction of the United States over admiralty and maritime affairs was exclusive. This decision according to our understanding has not been modified in its essential features by more recent pronouncements. It has been cited with approval and as a controlling authority on all matters within its scope in all subsequent decisions dealing with the subject. *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S. 372. *Union Fish Co.* v. *Erickson,* 248 U. S. 308. *Peters* v. *Veasey,* 251 U. S. 121. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. See also

other decisions herein cited.   It was held in *Western Fuel Co.* v. *Garcia*, 257 U. S. 233, at page 242, as the logical result of prior decisions, that where death upon navigable waters within a State resulted "from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given.   The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts, when following the  common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations."   The adjudication in *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, following earlier decisions, was that the construction of a new and uncompleted vessel lying in navigable waters had no direct relation to navigation or commerce and was nonmaritime in nature, and hence that rights and liabilities with respect to injury to a workman injured while engaged in such construction were governed by a workmen's compensation act.   This case was followed in *Gillard's Case*, 244 Mass. 47, *Danielsen* v. *Morse Dry Dock & Repair Co.* 235 N. Y. 439, and *Zahler* v. *Department of Labor & Industries*, 125 Wash. 410.   The converse of this principle was illustrated in *New Bedford Dry Dock Co.* v. *Purdy*, 258 U. S. 96, where it was held that a contract for converting a vessel into a different kind of water craft was for repair rather than for original construction and hence was maritime in nature.   In *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, the principle was reiterated that when one of a crew sustains injuries while on a vessel in navigable waters, " The general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court."   The decision rested on the ground that the vessel was unseaworthy and that in such instances the maritime law affords compensatory damages. *Proctor* v. *Dillon*, 235 Mass. 538.   The decision in *Industrial Commission of New York* v. *Nordenholt Co.* 259 U. S. 263,

was that a longshoreman, injured while engaged in unloading a vessel lying in navigable waters but actually at work on the dock (an extension of the land, *Cleveland Terminal & Valley Railroad* v. *Cleveland Steamship Co.* 208 U. S. 316), was subject to the workmen's compensation act of the State and not to maritime law. While the contract under which he was working was maritime in its nature, it was held in effect that, the place of injury being on land, the local law governed. It was said at page 273, quoting from *Grant Smith-Porter Ship Co.* v. *Rohde, supra,* " The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction, and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled." In *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479, a boiler maker employed to perform services as called upon was injured while repairing a vessel lying in navigable waters. It was held that admiralty law governed, the court saying, " Not only was the tort committed and effective on navigable waters, but the rights and liabilities of the parties are matters which have direct relation to navigation and commerce."

In *Washington* v. *W. C. Dawson & Co.* 264 U. S. 219 decided two days ago by the Supreme Court of the United States, it was adjudged that the workmen's compensation act of the State of Washington was inoperative over stevedores at work on board ship in navigable waters and that that of the State of California was inoperative over workmen actually engaged in maritime work under a maritime contract on a ship moored at her dock and discharging her cargo, and that the Act of Congress of June 10, 1922, c. 216, 42 U. S. Sts. at Large, 634, amending § 24, cl. 3 and § 256, cl. 3, of the Judicial Code was in direct conflict with the Constitution of the United States, and hence unenforceable. It further was expressly held that " None of the later cases depart from the doctrine of *Southern Pacific Co.* v. *Jensen,* [244 U. S. 205] and *Knickerbocker Ice Co.* v. *Stewart* [253 U. S. 149] . . . ." See *Danielsen* v. *Morse Dry Dock & Repair Co.* 235 N. Y. 439, certiorari denied in *Morse Dry Dock & Repair Co.* v. *Danielson,* 262 U. S. 756; and see also

*Zurich General Accident Liability Ins. Co. Ltd.* v. *Industrial Accident Commission,* 191 Cal. 769, and *Alaska Packers' Association* v. *Industrial Accident Commission,* 191 Cal. 763, in each of which certiorari was denied by the Supreme Court of the United States on January 28, 1924.

The principle deducible as we think from all these decisions is that the rights and liabilities of parties with respect to injuries received by a workman engaged in repair of a completed vessel lying in navigable waters are governed by maritime law, because the work has direct relation to navigation and the injury occurs on navigable waters. The place of occurrence is decisive as to jurisdiction. The nature of the contract seems to us to be of no significance. But, however that may be, we are of opinion that, so far as parties by their contracts contemplate the performance of labor in repair of vessels lying in navigable waters, the contracts are to that extent maritime in their nature.

The injuries were received in the cases at bar, the one in a floating dry dock and the other in a dry dock affixed to the land. A dry dock designed to receive vessels floating in navigable waters is itself part of navigable waters and subject to admiralty jurisdiction. A vessel employed in navigation is still a maritime object " within the admiralty jurisdiction when, for the purpose of making necessary repairs to fit her for continuance in navigation, she is placed in a dry dock and the water removed from about her. . . . Nor is there any difference in principle between a vessel floated into a wet dock, which is so extensively utilized in England for commercial purposes in loading and unloading of vessels at abutting quays, and the dry dock into which a vessel must be floated for the purpose of being repaired, and from which, after being repaired, she is again floated into an adjacent stream. The status of a vessel is not altered merely because in the one case the water is confined within the dock by means of gates closed when the tide begins to ebb, while in the other the water is removed and the gates are closed to prevent the inflow of the water during the work of repair. . . . There is in reason no distinction between the continued control of admiralty over a vessel when she is

in a dry dock for the purpose of being repaired and the subjection of the vessel when in a dry dock for repairs to the jurisdiction of a court of admiralty for the purpose of passing upon claims for salvage services." *The Steamship Jefferson,* 215 U. S. 130, 142, 143.

It was said in *The Robert W. Parsons,* 191 U. S. 17, 33, 34, " A dry dock differs from an ordinary dock only in the fact that it is smaller, and provided with machinery for pumping out the water in order that the vessel may be repaired. . . . But as all serious repairs upon the hulls of vessels are made in dry dock, the proposition that such repairs are made on land would practically deprive the admiralty courts of their largest and most important jurisdiction in connection with repairs."

There seems also to be no distinction in reason between the admiralty jurisdiction over repairs to a vessel in dry dock and over salvage services in saving a vessel in dry dock from destruction by fire established in the two decisions last cited, and admiralty jurisdiction over injuries received by a workman in making repairs on a vessel in dry dock. It was expressly so held in *The Anglo-Patagonian,* 148 C. C. A. 586, petition for writ of certiorari to which was dismissed in 242 U. S. 636, under the name *Lord* v. *Ledwitch. Danielsen* v. *Morse Dry Dock & Repair Co.* 235 N. Y. 439.

Whether the dry dock is floating or resting upon and attached to land is also an immaterial factor in view of these decisions. The essential factor is that the vessel floats into it.

These principles and decisions seem to us decisive of the cases at bar. Brandeis was injured in a floating dry dock while making ready the appliances for the repair of a seagoing vessel. We are of opinion that it is as much a part of the repair of a vessel to adjust to her hull the staging within the dry dock upon which men are to stand while performing the repairs as to be actually engaged in the craftsmanship of repair. *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479, *Washington* v. *W. C. Dawson & Co.* just decided, and *The Anglo-Patagonian,* 148 C. C. A. 586, appear to be precisely in point. O'Hara was injured while walking on a plank extending from the dry dock to

the side of the vessel in the performance of his work on her hull. This case cannot be distinguished in its salient facts from those upon which rests the decision in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205.

The decisions to which reference already has been made constrain us to hold that the admiralty jurisdiction of the United States excludes the operation of our workmen's compensation act with reference to the injuries here in issue. This result is not affected by the fact that our act is optional with the parties and is not compulsory. The voluntary and optional feature of statutory laws as distinguished from absolute compulsion sometimes is of decisive significance. *Holcombe* v. *Creamer*, 231 Mass. 99. Compare *Adkins* v. *Children's Hospital*, 261 U. S. 525. But the Supreme Court of the United States has held that admiralty jurisdiction as to personal injuries is fixed inexorably by the place of occurrence. " Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." *The Plymouth*, 3 Wall. 20, 36. When that court has held that admiralty jurisdiction is exclusive where the injury takes place on navigable waters in the repair of a completed vessel, to enable her to continue navigation, there seems to us no room for the operation of the workmen's compensation act. We felt obliged so to hold in *Duart* v. *Simmons*, 231 Mass. 313, 320; *S. C.* 236 Mass. 225, *Sterling's Case*, 233 Mass. 485, and *Dorman's Case*, 236 Mass. 583. We are bound by these decisions and we feel that they are sound. See also to the same effect with reference to elective statutes, *Neff* v. *Industrial Commission of Wisconsin*, 166 Wis. 126, Laws of Wis. 1911, c. 50, §§ 2394-5, 2394-6, *Foppen* v. *Fase & Co.* 219 Mich. 136, 2 Compiled Laws of Mich. (1915) §§ 5425-5430. Compare *West* v. *Klozer*, 104 Ore. 94.

The considerations already stated serve without further discussion to distinguish the cases at bar from *Gillards's Case*, 244 Mass. 47.

We feel compelled to hold that the injuries here in question gave rise to " cases of admiralty and maritime jurisdiction," and that they are not within the operation of the workmen's

compensation act. It plainly follows that the cases are not within the words of the Judicial Code " saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." Act of Congress of March 3, 1911, c. 231, § 24, cl. 3, and § 256, cl. 3, (36 U. S. Sts. at Large, 1091, 1161.) The workmen's compensation act is not a common law remedy. It is purely statutory and in substitution for the common law remedy. It has a form of procedure, rules for the establishment of liability and a scale of compensation wholly foreign to common law remedies. *Gould's Case*, 215 Mass. 480. *McNicol's Case*, 215 Mass. 497. *Devine's Case*, 236 Mass. 588, 592, 593. *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205 at page 218.

We do not regard Act of Congress of June 10, 1922, c. 216, (42 U. S. Sts. at Large, 634,) amending § 24, cl. 3, and § 256, cl. 3, of the Judicial Code, as operative upon the cases at bar in both of which the injuries occurred prior to its passage. That act must be regarded as prospective only in its operation. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3, 4, 5. *Shwab* v. *Doyle*, 258 U. S. 529, 534. But, as already stated, that act by the decision in *Washington* v. *W. C. Dawson & Co. ubi supra* has just been declared contrary to the Constitution of the United States and to stand on the same footing as the act held contrary to the Constitution in *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 164.

In each case the decree must be reversed and a decree entered in favor of the insurer.

*So ordered.*