### ARTHUR J. MOORES'S CASE.

Suffolk.    April 6, 1948. — July 2, 1948.

Present: QUA, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Incapacity. *Jurisdiction,* Maritime matters. *Admiralty.*

Discussion by QUA, C.J., of the decision of the Supreme Court of the United States in *Davis* v. *Department of Labor & Industries of the State of Washington,* 317 U. S. 249, and its creation of a "twilight zone" within which Federal and State workmen's compensation acts overlap and the injured workman may recover under either of them.

A case within the "twilight zone" created by the decision of the Supreme Court of the United States in *Davis* v. *Department of Labor & Industries of the State of Washington,* 317 U. S. 249, appeared where one employed in this Commonwealth as a "rigger" or "tag man," the major portion of whose work was done on piers, was injured by slipping while, for the purpose of giving signals to a crane operator, he was on board a completed vessel undergoing extensive repairs in a dry dock floating in navigable water adjacent to a pier to which it was fastened; and the injured employee was entitled to pursue his remedy under the Massachusetts workmen's compensation act.

Evidence warranted a finding by the Industrial Accident Board in a workmen's compensation case that, beginning six months after an injury to the employee's right hand through slipping and continuing for twenty-two months, he had partial incapacity due to the injury.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation under the workmen's compensation act.

The decision of a reviewing board, filed October 30, 1947, included a finding that the employee sustained an injury

to his right hand through slipping as described in the opinion on June 28, 1945, and the following findings: "On the question of disability and incapacity, we find that the employee's injury resulted in a deep laceration on the palm extended from the base of the index finger to the base of the fourth finger in a sigmoid pattern. . . . The employee was treated surgically . . . immediately after the injury, several stitches being taken in his hand. After exploration, the hand was then bandaged and he returned to work. He was totally incapacitated from June 29 to July 5, and then proceeded to perform his work with the bandage on his hand, but was unable to do very much with his hand until the bandage was removed after three weeks. He was favored in his assignment and continued on the job until January 2, 1946, when he was laid off. His hand did not improve and was weaker than his left or minor hand. He was notified by the insured to return to work in March but he declined because he did not feel that he could carry on the work of a rigger without endangering himself and others. Arthritis had been observed in his hand as early as July, 1945, following the incident of June 28, 1945. It was then noted in the middle finger, but within a few weeks, and continuing until the present time, he suffered pain and swelling in the second and fourth fingers. . . . Disuse and failure to use the hand more in some manner extended the period of disability of this employee; work therapy is definitely indicated. . . . We find that the employee was totally incapacitated for work as result of his injury during the period June 29 to July 5, 1945, and that he has been partially incapacitated as result thereof since January 2, 1946 . . . ."

The self insurer appealed from a decree entered by order of *Broadhurst*, J.

*S. P. Townsend & C. W. Oberdorfer*, for the self insurer.

*S. B. Horovitz*, (*J. H. Morris & L. S. Locke* with him,) for the claimant.

Qua, C.J. The self insurer appeals from a decree of the Superior Court awarding compensation under the workmen's compensation law to the employee for an injury suf-

fered by him on June 28, 1945, as the result of slipping on the step of a gun mount, while he was aboard a vessel in a dry dock floating in navigable water at the self insurer's plant at East Boston.

The principal question relates to the applicability of the State compensation law. The board's subsidiary findings of fact, which must control if there is any inconsistency between them and more general findings, are in substance these: The vessel was a four hundred seventy-five foot tanker chartered by the United States government. An explosion somewhere off Cape Cod had disabled her and had damaged about forty or fifty feet of her stern. She was towed to East Boston for repairs. Work was begun "June 8 to 28th." The vessel was under repair until December 20, completion being delayed by the necessity of obtaining new castings. The employee had been for many years an iron worker and rigger on land. His employment by the self insurer began January 11, 1944. His work was variously on piers, dry docks and ships at the self insurer's plant, where he was classified as a "rigger." Some of the time as "top tag man" he directed the efforts of other "tag men," fixing the hooks which were on the chains of the cranes to material to be moved and directing its movement from piers on land to dry docks or ships. There was much conflict in the evidence, including the testimony of the employee, as to the proportion of his time spent on the piers and the proportion spent on the dry docks and vessels, but the board found that as "tag man" the major portion of his work was on the piers, but occasionally it took him aboard vessels. The employee testified that at the time he was injured "he was going to get where his operator [the crane operator] could see him, so that he could give signals." The floating dry dock was fastened to the pier to which it was berthed by bolts spanning a distance of three or four feet from the pier itself.

We start with the established proposition that the Massachusetts workmen's compensation law covers all longshore maritime injuries not excluded by the constitutional grant of admiralty and maritime jurisdiction to the United States.

*Gillard's Case*, 244 Mass. 47. *Toland's Case*, 258 Mass. 470, 471–472. *Herbert's Case*, 283 Mass. 348, 350. *Lauzon's Case*, 302 Mass. 294, 295. See *Dorman's Case*, 236 Mass. 583, 584.

But since the decision in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, it has been necessary to observe carefully the line of demarcation between State and Federal authority as defined by a series of decisions of the Supreme Court of the United States following that case. In *O'Hara's Case*, 248 Mass. 31, decided in 1924, it appeared that the two injured employees were, at the times of their respective injuries, working on dry docks, one of which was floating and moored to piers and the other of which rested upon and was attached to land, and that each employee was engaged in the general work of repairing a previously completed vessel. The circumstances cannot, in our opinion, be distinguished in any material respect from those presented in the case at bar. This court reviewed at length the Federal decisions up to that time and stated as its conclusion the following: "The principle deducible as we think from all these decisions is that the rights and liabilities of parties with respect to injuries received by a workman engaged in repair of a completed vessel lying in navigable waters are governed by maritime law, because the work has direct relation to navigation and the injury occurs on navigable waters." 248 Mass. at page 37. It was held that the State act did not apply. This court further held that a dry dock designed to receive vessels floating in navigable waters is itself part of the navigable waters and subject to admiralty jurisdiction, citing *The Steamship Jefferson*, 215 U. S. 130, 142, 143, and *The Robert W. Parsons*, 191 U. S. 17, 33, 34. See to the same effect *Gonsalves* v. *Morse Dry Dock & Repair Co.* 266 U. S. 171. A decision generally similar to that in *O'Hara's Case* had also been made by this court in *Ahern's Case*, 247 Mass. 512. A repair job on a previously completed vessel has been held to fall within Federal jurisdiction, even though the repairs require the laying up of the vessel for a long period, and even though they entirely change the character of the vessel and the uses for which it

is adapted. *New Bedford Dry Dock Co.* v. *Purdy*, 258 U. S. 96. *Hillcone Steamship Co.* v. *Steffen*, 136 Fed. (2d) 965, 967. A different rule prevails where the work is being done in the construction of a new vessel, even though in part performed on navigable water, since a contract for new construction is not maritime in character and has no direct relation to navigation or commerce. Such work remains within State jurisdiction. *Thames Towboat Co.* v. *The Francis McDonald*, 254 U. S. 242. *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469. *Millers' Indemnity Underwriters* v. *Braud*, 270 U. S. 59, 63–64.

Decisions of the Supreme Court of the United States since *O'Hara's Case* was decided by this court were in accord with the rule there laid down until very recently. *Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449, 457. *John Baizley Iron Works* v. *Span*, 281 U. S. 222. If the matter rested at this point we should conclude that the decisions above cited furnished the necessary guide and required us to dismiss the claim under the State compensation law, as was done in *O'Hara's Case*.

But the situation was definitely altered by the decision of the Supreme Court of the United States in *Davis* v. *Department of Labor & Industries of the State of Washington*, 317 U. S. 249, written by Mr. Justice Black in 1942. That was not a case of repairs upon a previously completed vessel. It was a case where the employee fell from a barge where he was examining steel that he had just helped to cut from a bridge which was in process of being dismantled. The significance of the case, however, lies in its obvious attempt to set up a means of escape from the difficulties involved in drawing the line between State and Federal authority under the doctrine of the *Jensen* case. The *Davis* case recognizes a presumptive quality in the decisions of Federal authorities under the longshoremen's and harbor workers' act and a presumption of constitutionality of the State acts as applied to particular cases. The decision does not overrule the *Jensen* case. It does, however, at least as appraised by Mr. Justice Frankfurter, who concurred in it, and by Chief Justice Stone, who dissented from it, create a "twilight

zone" or an area of doubt within which the two acts overlap and the injured workman may recover under either of them. It would seem, therefore, that although apparently some heed must still be paid to the line between State and Federal authority as laid down in the cases following the *Jensen* case, the most important question has now become the fixing of the boundaries of the new "twilight zone," and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. Mr. Justice Frankfurter says that "Theoretic illogic is inevitable so long as the employee . . . is permitted to recover" at his choice under either act. 317 U. S. at page 259. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about "illogic," and to treat the *Davis* case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the *Davis* case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future.

We are the more inclined to include within the "twilight zone" the case of a workman engaged in an ordinary land occupation although occasionally going upon a dry dock or vessel to make repairs because in the latest case of that particular type decided in the Supreme Court of the United States, *John Baizley Iron Works* v. *Span*, 281 U. S. 222, although the case was held to be one exclusively of Federal cognizance, three of the justices dissented, and Mr. Justice Black in his opinion in the *Davis* case refers to the *Baizley Iron Works* case as if it were one of those responsible for the existing confusion. Moreover, the distinction between work-

ing on navigable water in repairing a previously completed vessel and doing precisely the same work on navigable water upon a vessel in process of construction may be thought a narrow one of doubtful practical validity.

For the reasons stated we are of opinion that the case now comes within the workmen's compensation law of this Commonwealth. The Supreme Court of Texas in *Emmons* v. *Pacific Indemnity Co.* 146 Texas, 496, sustained State jurisdiction in a very similar case in part for similar reasons. The Court of Errors and Appeals of New Jersey in *De Graw* v. *Todd Shipyards Co.* 134 N. J. L. 315, upheld State jurisdiction in a similar case but without citing the *Davis* case. The Supreme Court of the United States denied certiorari sub nomine *Todd Shipyards Corp.* v. *De Graw*, 329 U. S. 759. The decision of the Supreme Court of New Hampshire in *Arcand* v. *Gutterson & Gould, Inc.* 91 N. H. 194, came before the *Davis* case and was what our decision in this case would have been, except for the *Davis* case. Compare *Hardt* v. *Cunningham*, 136 N. J. L. 137.

We think it cannot be said that there was no evidence of partial incapacity due to the injury and continuing after January 2, 1946. There was evidence of loss of strength in the employee's hand and pain in the knuckles caused by this accident. It was for the board to say to what extent the employee's condition might have been improved by more exercise and to what extent he should be chargeable with neglect in this respect.

*Decree affirmed.*