JOHN HANSEN, PETITIONER-APPELLANT, v. PERTH AM-
BOY DRY DOCK CO., RESPONDENT-RESPONDENT.

Argued November 9, 1966—Decided January 23, 1967.

*Mr. Jack Mandell* argued the cause for appellant (*Messrs. Balk & Jacobs,* attorney; *Mr. Jack Mandell* on the brief).

*Mr. Isidor Kalisch* argued the cause for respondent.

The opinion of the court was delivered by

PROCTOR, J. This is a workmen's compensation case. Petitioner, John Hansen, was injured in the course of his employment as a ship painter. He received benefits for 49 weeks and 5 days under the federal compensation remedy, the Longshoremen's and Harbor Workers' Act, 33 *U. S. C. A.* § 901 *et seq.* Then he filed a petition for workmen's compensation under the laws of New Jersey. *N. J. S. A.* 34:15–1 *et seq.* The judge of compensation found for petitioner and made an award. The County Court reversed, holding that the federal compensation remedy was exclusive. The Appellate Division affirmed. We granted certification. 47 *N. J.* 239 (1966).

The facts are not disputed. Respondent has extensive dry dock facilities in Perth Amboy covering some two blocks and including shops for machine, carpentry, electric and paint work together with two warehouses and about 16 garages. Its dry docks are located on the Arthur Kill, navigable waters of the United States flowing between New Jersey and Staten Island, New York. Petitioner worked for respondent as a painter since 1956.

On April 15, 1959 petitioner was painting the stern of a ship. The ship was longer than the dry dock, and as a result he was required to use a ladder supported by a raft on the water in order to get access to the ship's stern. It was a new ship. While petitioner was lettering the name of the ship, the ladder broke and he fell and suffered serious injuries.

Most of petitioner's work consisted of painting ships in dry dock, some new and some already in operation. He did not work on moving ships or those at anchor. About four or five weeks each year he spent on land painting equipment or buildings of respondent.

Respondent carried workmen's compensation insurance with the same insurance company for petitioner and other employees under both federal and state acts. As mentioned, prior to this claim petitioner received compensation benefits designated by the insurance company as payable under the federal act. On this appeal respondent does not contend that the re-

ceipt of these federal benefits caused an election of remedies which would bar the present claim. *Cf. Calbeck v. Travelers Insurance Co.,* 370 *U. S.* 114, 131–132, 82 *S. Ct.* 1196, 8 *L. Ed. 2d* 368, 379 (1962).

█ It is clear that petitioner is entitled to compensation under the Longshoremen's and Harbor Workers' Act because his injury occurred on navigable waters of the United States. *Calbeck, supra,* 370 *U. S.,* at *p.* 124, 82 *S. Ct.,* at *p.* 1202, 8 *L. Ed. 2d,* at *p.* 375. The single issue on this appeal is whether compensation may validly be given petitioner for his work-connected injuries under the compensation laws of New Jersey or whether the remedy available under the federal act is exclusive.

The starting point for cases having to do with compensation of amphibious workers injured on navigable waters is *Southern Pacific Co. v. Jensen,* 244 *U. S.* 205, 37 *S. Ct.* 524, 61 *L. Ed.* 1086 (1917). There the United States Supreme Court held that the widow of a longshoreman killed on a ship while unloading cargo could not constitutionally receive compensation for his work-connected fatal accident under the laws of the State of New York. Such a state recovery, it was said, would interfere with the proper harmony and uniformity of the maritime law in its international and interstate relations and violate *Art.* III, *sec.* 2 and *Art.* I, *sec.* 8 of the United States Constitution. *Jensen, supra,* 244 *U. S.,* at *pp.* 215–216, 37 *S. Ct.,* at *pp.* 528–529, 61 *L. Ed.,* at *p.* 1098. This led to the harsh result of denying a compensation remedy to amphibious workers for injuries received on navigable waters because at that time there was no federal compensation act.

Congress took steps to remedy this hardship. It twice tried to empower the states to grant a blanket compensation coverage to amphibious workers, but these attempts were struck down by the Supreme Court as unlawful delegations of federal power to the states. *Knickerbocker Ice Co. v. Stewart,* 253 *U. S.* 149, 40 *S. Ct.* 438, 64 *L. Ed.* 834 (1920) ; *State of Washington v. W. C. Dawson & Co.,* 264 *U. S.* 219, 44 *S. Ct.*

302, 68 *L. Ed.* 646 (1924). In response to this judicial position Congress in 1927 passed the Longshoremen's and Harbor Workers' Act which provided a federal compensation remedy for workers injured on navigable waters:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 *U. S. C. A.* § 903(a).

This act continued the congressional view that the states should have and exercise the maximum permissible coverage of amphibious workers in their states whether injured on land or on navigable water. See Rodes, "Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone," 68 *Harv. L. Rev.* 637, 639 (1955); Morrison, "Workmen's Compensation and the Maritime Law," 38 *Yale L. J.* 472, 500 (1929).

The Supreme Court itself interpreted the *Jensen* rule so as to allow expansion of the constitutionally permissible area of state compensation for injuries occurring to certain workers on navigable waters apparently to ameliorate the situation of amphibious workers. The automatic rule of *Jensen* (*i. e.* "water's edge") was modified to allow consideration of the facts of each case. If the state recovery would not work material prejudice to a characteristic feature of the general maritime law, application of a state compensation remedy was held constitutional. Although maritime in character, the following employments were held to be sufficiently local to support state compensation remedies: *Grant Smith-Porter Ship Co. v. Rohde,* 257 *U. S.* 469, 42 *S. Ct.* 157, 66 *L. Ed.* 321 (1922) (construction of ships); *Millers' Indemnity Underwriters v. Braud,* 270 *U. S.* 59, 46 *S. Ct.* 194, 70 *L. Ed.* 470 (1926) (removing obstructions from river by divers); *Sultan Ry. & T. Co. v. Dep't of Labor & Ind.,* 277 *U. S.* 135, 136, 48 *S. Ct.* 505, 72 *L. Ed.* 820 (1928) (logging operations solely on navi-

gable water). Later the Supreme Court held that application of the state remedy to an amphibious worker injured on navigable waters would be presumptively constitutional. *Davis v. Department of Labor and Industries of Washington,* 317 *U. S.* 249, 257–258, 63 *S. Ct.* 225, 87 *L. Ed.* 246, 251 (1942) (steelworker drowned when he fell from a barge while dismantling a bridge).

A traditional answer to the present case could be found by seizing on the undisputed fact that the ship here was new and in the process of completion by being painted as distinguished from a ship already in commerce which was being repaired. It is settled that where the worker injured on navigable waters was working on new ship construction, a state may validly provide its compensation remedy. *E. g. Grant Smith-Porter Ship Co. v. Rohde, supra.* New Jersey courts have recognized the validity of the state remedy where the worker was injured on the conversion of a ship from one use to another, which work was said to be equivalent to construction of a new ship. *Allisot v. Federal Shipbuilding & Drydock Co.,* 4 *N. J.* 445 (1950) ; *DeGraw v. Todd Shipyards Co.,* 134 *N. J. L.* 315 (*E. & A.* 1946), *certiorari* denied *sub nom. Todd Shipyards Corp. v. DeGraw,* 329 *U. S.* 759, 67 *S. Ct.* 113, 91 *L. Ed.* 655 (1946) ; *Kelly v. R. T. C. Shipbuilding Corp.,* 87 *N. J. Super.* 313 (*App. Div.* 1965).

We think, however, that the availability of the state compensation remedy should not turn on the fortuitous circumstance of whether the ship on which an artisan was working was being constructed or being repaired. As Chief Justice Qua said for the Supreme Judicial Court of Massachusetts:

"[T]he distinction between working on navigable water in repairing a previously completed vessel and doing precisely the same work on navigable water upon a vessel in process of construction may be thought a narrow one of doubtful practical validity." *Moore's Case,* 323 *Mass.* 162, 167–168, 80 *N. E. 2d* 478, 481 (1948).

The employee in that case was an ironworker who performed some duties on land and some on ships; he was injured while

making repairs to a ship on navigable waters. The Massachusetts court affirmed an award of state compensation by finding that the employment relation was sufficiently land-based to support a state award. The state jurisdiction was presumptively correct because the local and land-based activities put the case within the *Davis* rule. This decision was affirmed by the United States Supreme Court *per curiam sub nomine Bethlehem Steel Co. v. Moores,* 335 *U. S.* 874, 69 *S. Ct.* 239, 93 *L. Ed.* 417 (1948). When the California courts denied state compensation to a laborer who worked on both land and water and who was injured while making repairs to a ship on navigable waters, the United States Supreme Court reversed in a memorandum decision citing *Moores* and *Davis. Baskin v. Ind. Acc. Comm.,* 338 *U. S.* 854, 70 *S. Ct.* 99, 94 *L. Ed.* 523 (1949). *Baskin* is particularly strong in its application of the presumption of the constitutionality of the state remedy as first set forth in *Davis* because in *Baskin* the Supreme Court in effect told the state court to make an award which it had previously denied.

■ The question as we understand it is not whether the ship was being constructed or being repaired but whether the *employment relation* (as distinguished from the work being done at the time of the accident) was sufficiently local that the state has a valid interest in providing its compensation remedy or whether the employment relation was so characteristically maritime that application of state law would work material prejudice to the general maritime law. *Moores* and *Baskin* show a departure from the reasoning of the earlier case of *Parker v. Motor Boat Sales, Inc.,* 314 *U. S.* 244, 62 *S. Ct.* 221, 86 *L. Ed.* 184 (1941), which seemed to make the character of the work at the time of the accident — local or maritime—the key to the determination of whether the state or federal act applied. However, it should be noted that this opinion, written by Justice Black, supported a federal compensation remedy to the family of a drowned employee who normally worked on land. At the time *Parker* was decided, it was widely believed that the federal act could not apply if a

state could validly grant compensation. Moreover, *Parker* must be read in the light of the later case of *Davis, supra,* also authored by Justice Black, which ordered a state remedy for a workman killed on navigable waters.

We think the employment relation here was sufficiently local in character that our state compensation act may validly provide a remedy for petitioner's work-connected injury. Petitioner worked four to five weeks each year exclusively on land. A substantial part of his work at respondent's dry docks was on new boats which is an activity long considered to be local in character. His employer had substantial physical assets on New Jersey land, and the employment contract itself was based in the State of New Jersey and was not transitory. See *Cordova Fish & Cold Storage Company v. Estes,* 370 P. 2d 180 (*Alaska Sup. Ct.* 1962).

The remarks of Justice Heher writing for this Court in *Allisot* are particularly apt:

"There is a marginal area that encompasses cases in which the employment combines characteristics common to both maritime and nonmaritime service, where neither the employment nor the particular service is so identified with navigation or commerce as that the application of the local rule would work material prejudice to the characteristic features of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations, and so the matter is essentially of local concern and the rules of the maritime law may be modified or supplemented by state law without running afoul of the Federal Constitution. Such is the case here. The claimant was employed as a painter on land and on navigable waters—on vessels in process of construction and in the repair and reconstruction of vessels in service; neither his contract of employment nor his service in the reconstruction of the vessel in question was so directly related to navigation or commerce as to exclude local law in making compensation for injury suffered in the doing of his work on the ground of material prejudice to the general maritime law." *Allisot v. Federal Shipbuilding & Drydock Co., supra,* 4 *N. J.,* at *p.* 453.

Other New Jersey cases have granted state compensation to amphibious workers injured on navigable waters whose employment was local in character. *DeGraw v. Todd Shipyards*

*Co.* and *Kelly v. R. T. C. Shipbuilding Corp.,* both *supra.* Those cases which have found the federal jurisdiction to be exclusive have turned on the determination that the injured workman was engaged in purely maritime employment. *Green v. Simpson & Brown Const. Co.,* 14 *N. J.* 66, 70–71 (1953) (dredge watchman); *Hardt v. Cunningham,* 136 *N. J. L.* 137, 143–144 *(Sup. Ct.* 1947) (barge captain); *Gaddies v. Trenton Marine Terminal, Inc.,* 86 *N. J. Super.* 125, 128 *(App. Div.* 1965) (stevedore).

■ The facts here show an area of state jurisdiction in what has frequently been called the "twilight zone." An employee working in this twilight zone, though injured on navigable waters, has a sufficient connection with the state so that a state remedy will be presumed valid even though the employee might also have a federal compensation remedy. *Allisot, Davis, Moores,* and *Baskin,* all *supra.*

Respondent has not suggested any detrimental effect which a state recovery here would have upon a general maritime interest. Because of the nature of the work done by petitioner, some on land and some on water, respondent must of necessity have coverage under both state and federal acts. As said above such dual coverage has in fact been obtained and both policies are written by the same insurance carrier. We note that the added cost of such dual coverage is nominal. 2 *Larson, Workmen's Compensation* § 89.60, 419 n.5 (1961); Note, 50 *Calif. L. Rev.* 342, 346–347 (1962).

■ Respondent contends that concurrent state and federal jurisdiction in the twilight zone was supported prior to *Calbeck* only by the ambiguity of coverage under state and federal acts. See *Dunleavy v. Tietjen & Lang Dry Docks,* 17 *N. J. Super.* 76, 89–94 *(Cty. Ct.* 1951), affirmed o. b. 20 *N. J. Super.* 486 *(App. Div.* 1952). Because of this ambiguity an injured employee might lose a compensation remedy by applying for it in the wrong forum. Respondent argues that *Calbeck* makes the federal act exclusive in the twilight zone because an amphibious worker injured on navigable waters now has a certain remedy under the federal act.

It was held by the United States Supreme Court prior to *Calbeck* that the certain availability of a federal remedy was not a sufficient cause to preclude the state from taking jurisdiction of a case and granting relief to an injured employee under state law. The Oregon Supreme Court denied a state remedy (an action at law because the employer had elected not to provide state compensation coverage) to an oiler injured while working on a barge on navigable waters because the employee's sole remedy was said to be under the federal act. *Hahn v. Ross Island Sand & Gravel Co.*, 214 *Or.* 1, 320 *P. 2d* 668 (1958). The United States Supreme Court reversed, holding the case to be in the twilight zone and properly one of concurrent state and federal jurisdiction. *Hahn v. Ross Island Sand & Gravel Co.*, 358 *U. S.* 272, 79 *S. Ct.* 266, 3 *L. Ed. 2d* 292 (1959). As the dissent points out, this decision was reached notwithstanding that the employee had spurned the compensation benefits clearly available to him at all times under the federal act. *Id.*, 358 *U. S.*, at *p.* 274, 79 *S. Ct.*, at *p.* 268, 3 *L. Ed. 2d*, at *p.* 294.

We find nothing in *Calbeck* which indicates a limitation on state jurisdiction to compensate amphibious workers or tends to change the holding of *Hahn*. In *Calbeck* two welders were injured while working on the construction of new ships on navigable waters. The Court of Appeals reversed awards of federal compensation because a state could validly apply its laws to employees working on the construction of ships. In fact, one of the welders had already received compensation benefits from Louisiana for his injury. The Supreme Court reversed, holding that the federal act applied to all injuries on navigable waters regardless of whether a state might also validly compensate the injury. The welder who had received state benefits was denied a double recovery but was not precluded from receiving any advantage otherwise obtainable. Two quotations in particular show that the Supreme Court did not intend to limit state jurisdiction:

"Our conclusion is that Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." *Calbeck*, 370 *U. S.*, at *p.* 117, 82 *S. Ct.*, at *p.* 1198, 8 *L. Ed. 2d*, at *p.* 371.

"Congress brought under the coverage of the Act all such injuries whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." *Calbeck*, 370 *U. S.*, at *pp.* 126–127, 82 *S. Ct.*, at *p.* 1203, 8 *L. Ed. 2d*, at *p.* 377.

Thus the Court recognized that state jurisdiction was concurrent for injuries occurring on navigable waters under factual situations where the state can constitutionally provide a compensation remedy. 2 *Larson, Workmen's Compensation* § 89.25, 415–417 (1961) and 481–482 (*Supp.* 1966); Note, 10 *U. C. L. A. L. Rev.* 1225, 1231–1233 (1963); Note, 48 *Cornell L. Q.* 532, 540–541 (1963); Note, 31 *Fordham L. Rev.* 398, 402 (1962); see *Michigan Mutual Liability Company v. Arrien*, 233 *F. Supp.* 496, 500 (*S. D. N. Y. 1964*). We find no intent in *Calbeck* to reduce the remedies for injured workmen by elimination of previously available state compensation coverage.

■ The most consistent factor appearing in the numerous United States Supreme Court decisions beginning with *Davis* and pertaining to the compensation of amphibious workers is the desire that an injured claimant should receive the maximum compensation possible and "not lose his remedy in a maze of legalisms." *Gilmore & Black, Admiralty* § 6–50, 353 (1957). The strong interest of New Jersey in seeing that its injured employees obtain the maximum compensation benefits available under the state law yields to federal exclusivity only when the grant of such state benefits would actually work substantial prejudice to the national maritime law. No such prejudice has here been shown.

For the foregoing reasons we conclude that petitioner is entitled to workmen's compensation under the laws of New Jersey. The judgment of the Appellate Division is reversed,

and the judgment of the Division of Workmen's Compensation is reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.