HORACE W. BEHRLE *vs.* LONDON GUARANTEE AND ACCIDENT

COMPANY, LTD. *et al.*

AUGUST 17, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is an original petition brought under the workmen's compensation act, general laws 1938, chapter 300, by an employee against his employer and the latter's insurance carrier to obtain compensation and medical expenses by reason of an injury allegedly caused by an accident arising out of and in the course of his employment. In the superior court, after a hearing on the merits of respondents' appeal from the decision of the director of labor, the prayers of the petition were granted by the trial justice and a decree was accordingly entered.   From such decree the respondents duly prosecuted an appeal to this court.

The basic question in this case is one of jurisdiction. Respondents contend that the petitioner is not entitled to relief under our workmen's compensation act because at the time of the accident and injury he was engaged in a maritime activity aboard a vessel afloat on navigable waters. In other words, respondents' contention is that the petitioner's case falls squarely within the doctrine of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and therefore is within the exclusive admiralty and maritime jurisdiction of the United States.

The facts are practically undisputed.   Weeden T. Underwood, petitioner's employer, was a general plumbing contractor in the city of Newport.   Prior to the recent war his business was confined to ordinary construction and repair work, but during the war years he also engaged in doing plumbing work as subcontractor of the Newport Shipyard

on vessels which were ordinarily moored to its dock in navigable waters. Naval as well as commercial vessels were sent to the shipyard for repair. In order to carry on his work more expeditiously at the shipyard, Underwood maintained an office there with a foreman, Thomas W. Curtis, and four or five plumbers regularly assigned to that work. The petitioner was not one of those men, but as necessity required he was sent from Underwood's main office to the shipyard to do whatever plumbing work on vessels might be assigned to him by Curtis.

On December 17, 1943 petitioner reported to Curtis at the shipyard and was sent by him to the Y. M. S. 80, a mine sweeper of the United States Navy, to repair some *leaky pipes in the engine room* of that vessel, which was tied alongside another boat that was moored to the dock of the shipyard. Both vessels were then admittedly in navigable waters. In order to get aboard the Y. M. S. 80 the petitioner had to walk over a gangplank from the dock to the first boat and then, after stepping from the rail of that boat to the rail of the mine sweeper, jump three or four feet onto its deck. No untoward incident happened when the petitioner went to do the work assigned to him, which he completed in about two hours. On his way back, however, he was thrown and fell flat on his stomach onto the deck of the first boat when, as he was stepping from the rail of the mine sweeper to that of the other boat, the surge of a wave apparently forced the two vessels temporarily apart. There was undisputed medical evidence to the effect that petitioner suffered serious injury as a result of such a fall.

In a case like the one at bar we are governed by the rule originally laid down in *Southern Pacific Co.* v. *Jensen, supra,* and later affirmed in *Parker* v. *Motor Boat Sales, Inc.,* 314 U. S. 244, and *Davis* v. *Department of Labor and Industries,* 317 U. S. 249, unless the facts here bring it within the "twilight zone," so called, of the *Davis* case. It would serve no useful purpose to mention and much less to discuss in this opinion the many conflicting decisions of both

federal and state courts that stem from the *Jensen* case. The *Davis* case, recognizing that "much serious confusion" exists in this class of cases, apparently intended to protect an injured employee from possible injustice by a strict application of the *Jensen* rule in situations of "marginal employment" when "by reason of particular facts" compensation could be sought under either federal or state law.

In our judgment the purpose of such holding was to give some flexibility to the rule of the *Jensen* case and thus relieve an injured employee from the hazardous burden of correctly determining at the outset the forum in which he may properly prosecute his claim. Addressing itself particularly to situations where the duties of an employee were partly on land and partly on navigable waters, the court in the *Davis* case said that there was "clearly a twilight zone in which the employees must have their rights determined case by case, and in which *particular facts and circumstances are vital elements*." (italics ours) The limits of the twilight zone mentioned by the court are undefined.

One must bear in mind that in the instant case the employee was injured in connection with work on a vessel of the United States Navy and not on a ship that was admittedly engaged in commerce, as in the *Jensen* case. In that case the supreme court reversed an award to the wife and children of the deceased employee under the workmen's compensation laws of New York on the ground that as the accident happened on navigable waters while the employee was performing a purely maritime service the case was therefore within the admiralty and maritime jurisdiction of the United States. Its reason for so holding was that "no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." In short, in the *Jensen* case the court was solely

concerned in preserving from interference by the states the uniformity and harmony of the general maritime law which the federal constitution expressly commits to the exclusive care of the United States.

Were it not for the fact that in the case at bar the petitioner had been working on a ship of the United States Navy, we probably would be constrained to apply the rule of the *Jensen* case and overrule the decision of the trial justice, as the accident clearly happened in connection with repair work on a ship in navigable waters. However, there is no evidence in the record before us that the Y. M. S. 80 was ever used as a ship of commerce or that it was being repaired at the time of the accident for any such purpose. As far as appears in evidence that ship was a combat vessel not engaged in commerce within the ordinary meaning of that term and had no connection in its functioning with the general maritime law.

In our judgment the determinative question here is whether in the circumstances this case comes within the rule of the *Jensen* case, or whether the fact that the accident happened in connection with repair work on a naval vessel makes the case one of "marginal employment" and thus brings it within the "twilight zone" described in *Davis* v. *Department of Labor and Industries, supra.* We have found no decision of the supreme court and none has been brought to our attention which holds that a naval vessel is an instrument of commerce and therefore exclusively within the scope of the general maritime law with which the supreme court was concerned in the *Jensen* case.

The question of whether a naval vessel is at any time and in any sense engaged in commerce was, however, the subject of consideration by United States circuit courts of appeals in two cases, both of which involved the application of the Fair Labor Standards Act of 1938. In *Ritch* v. *Puget Sound Bridge & Dredging Co.*, 156 F.2d 334, the ninth circuit court held that a contractor's deepening of navigable waters by channels with retaining walls for

navigation of navy combat ships into the berths constituted "engaging in commerce" within the meaning of that act. Because "All vessels of the Navy, including combat vessels, are radio stations which may engage in 'communications' in the transmission of commercial radio messages from the home offices in the states to commercial vessels at sea," and because such vessels transport "mails of non-combatants as well as combatants under contracts with the Postmaster General," and also because of certain other specified activities, the court held that combat ships were, to such extent at least, "engaged in commerce for the use of private persons * * *."

In *Divins* v. *Hazeltine Electronics Corp.*, 163 F.2d 100, the second circuit court took a directly opposite view with reference to the repair and servicing of war vessels operated by the United States in the prosecution of the war. "It is true," said the court, "that warships transport men, munitions, food for crew and troops, and occasionally, perhaps, supplies for civilians; and they may at times transmit radio messages for civilians." It then cited the *Ritch* case, and proceeded as follows: "This literally satisfies the statutory definition of commerce, but such transportation or communication is merely incidental to the war purpose for which the vessel is actually being used. To hold that workmen who repair aircraft carriers, battleships, submarines or other types of vessels used as weapons of war are 'engaged in commerce,' stretches the quoted words, elastic though they be, beyond all reasonable limits."

The only other case bearing on the question under consideration that has come to our attention is *DeGraw* v. *Todd Shipyard Co.*, 133 N. J. L. 402. There the petitioner in a workmen's compensation case was injured by accident while working as a pipe fitter upon a ship which had been a freighter and was being rebuilt in a dry dock for use as an A. P. attack transport for Pacific duty. Although the case was decided in favor of the petitioner on the facts,

yet the court observed that "A naval vessel is not engaged in commerce under any circumstances."

Before expressing our conclusion on the point under consideration we deem it advisable to observe that at the time of petitioner's accident, December 17, 1943, this country was engaged as an active participant in World War II. There being no evidence that the Y. M. S. 80 was then being repaired for use in commerce, the inference is irresistible and well-nigh conclusive that at that time it was exclusively a naval ship for use as a weapon of war. Furthermore, there was no evidence that the employer here had complied with the provision of the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §901 et seq., requiring employers to secure the payment of the prescribed benefits to those of their employees whose employment is covered by the act.

Our examination of the above-mentioned cases has but served to increase the doubt which we entertain as to whether the case at bar is ruled by the Jensen case. Upon reflection, however, we are inclined to treat it as one which fairly falls within the "twilight zone" described in Davis v. Department of Labor and Industries, supra. There the court said: "That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." And it further observed: "Not only does the state act in the instant case appear to cover this employee, aside from the constitutional consideration, but no conflicting process of administration is apparent."

A similar situation exists in the peculiar circumstances of the case at bar. Since the supreme court has not held that a combat vessel of the United States Navy is engaged in commerce and functioning within the scope of the general maritime law which concerned it in the Jensen case, and further since two federal circuit courts of appeals are in disagreement about the matter, and finally since we find there are particular facts and circumstances of vital im-

portance to the petitioner in the case at bar we are disposed to resolve our doubts in favor of the constitutionality of the workmen's compensation act of this state in its applicability to the petitioner's case. We therefore hold that the trial justice did not err in deciding that the petitioner was within the protection of that act when he received the injury in question.

The remaining contention of the respondents to the effect that the evidence does not support the trial justice's finding that the petitioner sustained an injury by accident arising out of and in the course of his employment is without merit. Our examination of the transcript shows that there was legal evidence to support the finding of the trial justice. In such a case under our statute we do not weigh the evidence and the finding is conclusive in the absence of fraud. Here no claim of fraud is even suggested.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

### On Motion for Reargument.

#### NOVEMBER 16, 1949.

PER CURIAM. After our decision in the above case the respondent London Guarantee and Accident Company, Ltd. asked and received permission to file a motion for reargument. Pursuant to this permission it has filed such a motion, setting out therein the grounds on which it bases its contention that justice requires a reargument of the case. We have carefully considered such grounds and we are of the opinion that they do not warrant a reargument of the case.

Motion denied.

*Morrissey & Conley, Joseph L. Breen,* for petitioner.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent London Guarantee and Accident Company, Ltd.; *Arthur J. Sullivan,* for respondent Weeden T. Underwood.