**CITY OF AUSTIN, Appellant,**

v.

**Albert CLENDENNEN, Appellee.**

No. 10643.

Court of Civil Appeals of Texas.

Austin.

March 18, 1959.

Rehearing Denied April 8, 1959.

Doren R. Eskew, City Atty., Robert J. Potts, Jr., Asst. City Atty., Austin, C. J. Taylor, Jr., and Thomas R. Hunter, Asst. City Attys., Austin, for appellant.

Burris, Benton, Baker & Zwiener, Houston, Charles L. Krueger, Austin, L. Hamilton Lowe, Austin, of counsel, for appellee.

GRAY, Justice.

This is a workmen's compensation case. Appellant, City of Austin, became a self-insurer under Art. 8309e, Vernon's Ann. Civ.St. Appellee was an employee of the city and on July 30, 1955, sustained accidental injuries in the course of his employment.

In his suit appellee alleged that he suffered permanent total disability and, in the alternative, that he suffered permanent partial disability.

Upon a jury's verdict the trial court rendered judgment awarding appellee a recovery for temporary total disability for 49 weeks at $25 per week, and for partial disability for 300 weeks at $17.10 per week.

Appellant here presents four points. These are to the effect that the trial court erred: in holding that the charter provision of the city (Art. XII, Sec. 7) providing that the city shall not be liable for damages for the death of, or for personal injuries to, any person unless the city council or the city manager shall be given notice in writing, duly verified, within 45 days after the date such death or personal injuries occurred, was not applicable to claims for workmen's compensation; in submitting special issues 3 and 8 to the jury, and in denying a setoff for advances of "compensation" paid to appellee.

In City of Austin v. Powell, 321 S.W.2d 924, we held that Art. XII, Sec. 7 of the Austin city charter was not applicable to a claim for workmen's compensation for the reason that the claim was not against the city in its capacity as an employer but in its capacity as an insurer. We adhere to our holding but we will here further discuss the merits of the question.

It is to be noticed that the city does not say that it did not become a self-insurer under the Workmen's Compensation Act and does not say that the suit is not against it in that capacity. Neither does it say that the provisions of that Act have not been complied with by it or by appellee.

Section 3 of Art. 8309e of the Workmen's Compensation Act authorizes cities to extend workmen's compensation benefits to employees by becoming self-insurers or by providing insurance under workmen's compensation insurance contracts or policies. It provides that the provisions of the Act are permissive and not mandatory; that the city may by ordinance or by resolution adopt the provisions of the Act; that notice

shall be given to the Industrial Accident Board of such action and further that:

"Notice shall also be given to the employees of the city, town or village of the provision so made for such workmen's compensation benefits and the effective date thereof; and employees of the city, town or village shall be conclusively deemed to have accepted such compensation provisions in lieu of common law or statutory liability or cause of action, if any, for injuries received in the course of employment or death resulting from injuries so received."

Thus an exclusive remedy for injuries sustained is provided for employees of cities adopting the provisions of the Act and other remedies for such injuries is denied them.

The city had the option to adopt the provisions of the Act or to remain free from its operation. However the city having elected to accept its provisions then the language of the court in Oilmen's Reciprocal Ass'n v. Franklin, 116 Tex. 59, 286 S.W. 195, 196, is applicable:

"The legislation in question marks off and occupies a field of special regulation. The Legislature purposed a very material change of rights and remedies available to employers and employees of the classes dealt with. Substantially, with the consent of those to be affected, pre-existent bases of rights were destroyed, and old remedies were made unavailable. In their stead, new conditions were prescribed under which rights would accrue, and hitherto unheard of remedies for the enforcement of those rights were named, as generally explained in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556. In becoming a 'subscriber' under the law, the employer claims its benefits, and thereby voluntarily yields rights which he might otherwise have in substitution for those there prescribed, and by entering or remaining in the service of an employer who has thus become a 'subscriber' the employee voluntarily effects a comparable change of position. As to a person, etc., who may become an 'insurer,' the statute itself, of course, is the source of all rights claimable, and the subjection of those rights to the remedies prescribed rests entirely in volition. As between the three persons affected in any case, new rights, new duties, and appropriate new remedies come into existence by operation of the law."

In support of its contention that the 45 days notice provided by Art. XII, Sec. 7, supra, is applicable here the city says in its brief:

"Section 12 of Article 8309e authorizes a city to 'promulgate and publish such rules and regulations * * * as may be necessary to the effective administration of this law.' The general Workmen's Compensation law has no such provision."

and further says:

"That the City Council was mindful of the limitation upon its power to ignore the Notice of Claims provision, and of its power to enact rules and regulations in connection with the Workmen's Compensation, is shown by the 'Personnel Policies', adopted pursuant to a Charter provision, of which Personnel Policies Paragraph 6.8d reads as follows:

" '6.8d. The provisions of the Charter of the City of Austin requiring the giving of notice of claim to the City shall be complied with before the City shall be liable on any claim for damages, and neither the filing of any accident report, the payment of any Workmen's Compensation benefit, the continued employment of an employee, nor the granting of any injury leave shall constitute a waiver of such notice of claim requirement, nor estop the City from requiring strict compliance with such provision.' "

In reply to the first quotation supra the rules and regulations therein mentioned

clearly refer to the administration of the Workmen's Compensation Law. Moreover the Workmen's Compensation Law, Art. 8307, Sec. 4a, in part provides:

"Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury * * *"

■ Paragraph 6.8d, supra, can only apply to the liability of the city as such and not to liability under the compensation laws.

■ To give effect to appellant city's contention would be to permit the city to enact rules and regulations contrary to the Constitution and to the general law. This it cannot do even though it is a home-rule city. Art. 11, Sec. 5, Texas Constitution, Vernon's Ann.St. Art. 1165, Vernon's Ann.Civ. St.; City of Beaumont v. Gulf States Utilities Co., Tex.Civ.App., 163 S.W.2d 426, Er. ref., w. m.

Appellant's point one is overruled.

■ Issue 3 inquired if appellee has or will suffer any total incapacity. The jury answered yes. Issue 7 inquired if appellee has or will suffer any partial incapacity. The jury answered this issue affirmatively and conditioned on that answer they were asked, by issue 8, to find whether such partial incapacity is permanent, or was or will be temporary. The jury answered "It is permanent."

The trial court defined the terms "total incapacity" and "partial incapacity". Appellant agrees that these definitions are correct. However it complains that the trial court erred in submitting issues 3 and 8 and in rendering any judgment on the jury's answers to those issues because there was no credible evidence from which the jury could answer as they did.

Prior to his employment with the city appellee had worked at various places and at different kinds of work including farming. His work with the city began with construction in the city's electric distribution. He testified that on July 30, 1955, in answer to a call to disconnect electric service to a two story garage apartment, he and another employee went to the apartment; that in making the disconnection it was necessary to pull down a cable and that a tree was involved; that to avoid pulling the cable down into the tree he attempted to throw a rope over the apartment; that when he started to throw the rope caught on a piece of steel pipe and he was jerked down; that this occurred on Saturday and that he went to see Dr. Bailey Monday morning. Dr. Bailey testified that he found no bone injuries and that his diagnosis was: "strained muscles and ligaments of the right shoulder and lumbosacral strain and left sacroiliac joint strain."

Dr. Smith, an orthopedic surgeon, testified that he first saw appellee on October 17, 1955, and that he saw him again on February 14, 1958, and testified:

"Q. Would you attempt to state what percent his disability was at that time? A. Oh, taking into consideration his arm and his back, I would say probably twenty-five or thirty percent, so far as general efficiency was concerned.

"Q. That is on light work? A. No. When I said general efficiency, I meant every type of activity. There would be about one-third of things that he would not be able to do.

"Q. Was it about the same on this last visit, Doctor? A. Yes, I think so. I couldn't see that there was a great deal of improvement in his condition."

Appellee testified that after his injury he reported back to his job but because of his injuries and the accompanying pain he was not able to work; that after his injury he did not work until July, 1956 when he went out to the Confederate Home in Austin and began barbering but that because of his in-

juries he was not able to do this work and had to quit; that he tried painting but because that work required him to lift his arm above his head he could not do it; that he raised a few cattle and did a little farm work; that he could ride a tractor for a little while at a time but only about two days a week.

Appellee's testimony was corroborated by other witnesses and his wife.

The city's Superintendent of Electric Distribution testified that he received a doctor's release for appellee to do light work and that he saw him on December 8, 1955, and offered to put him in the dispatching office which job would be sitting and answering the radio. Appellee did not take this job.

Appellant's points two and three, supra, simply raise the issue that there was no evidence that appellee was totally incapacitated after July 30, 1955, or that his partial incapacity was permanent.

Appellant does not contend that appellee did not sustain injuries but says there was no evidence to show that such injuries were disabling to the extent found by the jury. Appellee's testimony is positive that his injuries prevented him from engaging in full-time work and, at most, permitted him to work for short periods only and his evidence is corroborated. The testimony of Dr. Smith shows that appellee was disqualified from performing the usual tasks of a workman.

Dr. Smith's testimony was that appellee's disability was 25 or 30 per cent with but little improvement on February 14, 1958, a period of more than two years, and appellee's testimony was to the effect that he could not perform "all of the usual tasks of a workman" and that his earning capacity was reduced.

There was some evidence of total incapacity and of permanent partial incapacity. This was evidence of probative value to support the findings of the jury in answer to issues 3 and 8 for which reason the judgment of the trial court rendered on those findings cannot be set aside. Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977. It is our opinion that there was some evidence to support those findings and appellant's points 2 and 3 are overruled. Texas State Highway Department v. Kinsler, Tex.Civ.App., 230 S.W.2d 364, Er. ref.

██ Under its fourth point appellant says it is entitled to an offset for "compensation" paid appellee amounting to $1,402.-36.

Appellee does not deny that he received payments of compensation. He identified copies of receipts for payments and said:

"* * * they are—it shows how much my check amounted to, how much they deducted for usual deductions, total, benefit provided by the personnel policies, and workmen's compensation."

These receipts list payments of workmen's compensation amounting to $457.11.

The Industrial Accident Board directed appellant to pay to appellee $25 per week for 40 weeks.

In oral argument appellee agreed that payments of workmen's compensation should be set off against appellee's recovery. In view of this agreement we will not notice these payments further but will allow the setoff.

Appellant also says that it is entitled to a further setoff of $945.25 received by appellee for work performed and for payments of benefits provided by personnel policies.

██ To allow an offset for money earned by appellee subsequent to his injury would violate the well-established rule that a person is not precluded from recovering workmen's compensation by reason of working and earning money after the date of his injury. National Surety Co. v. Roberts, Tex.Civ.App., 217 S.W.2d 894, 902. Also it would prevent a recovery for loss of earning capacity for which a workman is entitled to recover. Texas Employers' Ins.

Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, Er. ref., n. r. e. Under these same principles a setoff for the amount paid appellee under the personnel policy must be denied. We think Sec. 12 of Art. 8309e, supra, authorizes the city to promulgate and publish rules for the administration of the Act and for the prevention of accidents and injuries but we see nothing in the section that authorizes the city to promulgate rules governing the amount of recovery of workmen's compensation under the well-established rules of law.

The judgment of the trial court is reformed by allowing a setoff of $457.11 against appellee's recovery and as reformed it is affirmed.

Reformed and as reformed affirmed.