Tom **JOHNSON**, Appellant,

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION**, Appellee.

No. 8013.

Court of Civil Appeals of Texas, Beaumont.

Oct. 20, 1977.

Rehearing Denied Nov. 10, 1977.

Sid S. Stover, Jasper, for appellant.

O. J. Weber, Beaumont, for appellee.

DIES, Chief Justice.

Plaintiff below, Tom Johnson, filed suit against Texas Employers' Insurance Association (T.E.I.A.) in the District Court of Jefferson County for Texas Workmen's Compensation, alleging an accidental injury while employed by Bethlehem Steel Corp. T.E.I.A. answered by a plea in abatement and to the jurisdiction contending that plaintiff's injuries "come solely under the jurisdiction of the Longshoremen [Longshoremen's] & Harbor Worker's [Workers'] Act" (L.H.W.C.A.), which the court sustained and from which plaintiff brings this appeal.

Plaintiff's first contention is that his injury was not covered by L.H.W.C.A.

Bethlehem's Beaumont shipyard is located on an island and is engaged in repairing and constructing marine vessels. Plaintiff was an assistant crane operator or "hooker" in the fabrication shop. Steel is brought into this "fab" shop and then fashioned into

a component part for the vessel under repair or construction. It (the fab shop) is about 75 to 100 feet from navigable water.

After completion, the component is moved out of the fab shop to the vessel by crane and barge.

At the time of his injury, plaintiff's time was being charged to "No. 1 cross-over" for the new construction of a semisubmersible offshore drilling rig. These vessels float and are moved to a drilling location either by tugs, or some have their own propulsion. The "cross-over car" is part of the superstructure of the vessel. This type of rig has been held a "vessel" as used in *33 U.S.C.A. § 903(a) (1977)* hereafter set forth in this opinion. *McCarty v. Service Contracting, Inc.,* 317 F. Supp. 629 (E.D.La.1970); *Robichaux v. Kerr McGee Oil Industries, Inc.,* 317 F.Supp. 587 (W.D.La.1970).

In 1972, Congress added these amendments to the L.H.W.C.A.:

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). [*33 U.S.C.A. § 903(a) (1977)*]

"The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker . . . . [*33 U.S.C.A. § 902(3) (1977)*]

"The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). [*33 U.S.C.A. § 902(4) (1977)*]"

A very recent opinion of the U.S. Supreme Court, *Northeast Marine Terminal Company, Inc. v. Caputo (International Terminal Operating Company, Inc. v. Blundo),* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), construed these amendments.

Respondent Blundo whose job as a "checker" at a pier for petitioner International was to check and mark cargo being unloaded from a vessel or from a container taken off a vessel, was injured when, while marking cargo, he slipped on some ice on the pier.

Respondent Caputo was a terminal laborer hired by Petitioner Northeast to load and unload barges and trucks and received injuries while loading a dolly loaded with ship's cargo into a consignee's truck.

A unanimous Court held that both Blundo and Caputo satisfied the "status" test of eligibility for compensation under the L.H. W.C.A. since they were both engaged in maritime employment and were therefore "employees" with the meaning of *33 U.S. C.A. § 902(3)* at the time of their injuries. The injuries of both respondents occurred on a "situs" covered by the Act.

■ It is obvious that under this decision our plaintiff satisfied the "status" and "situs" requirement of the Act and was an "employee" within the meaning of *33 U.S. C.A. § 902(3)* at the time of his injuries. This point is overruled.

Plaintiff's next and last point is that coverage under the Federal Act is not exclusive. *33 U.S.C.A. § 905(a)* of the Act provides:

"(a) The liability of an employer prescribed in Section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer."

This section says that if an employer sees that an injured employee secures payment of compensation as required by this Act,

then the employer is protected from tort liability to such employee. This is the typical provision in State Compensation Acts. There is no indication in this section of the Act that Federal coverage is exclusive of any other.

We have been cited to but one case handed down since the 1972 Amendments on this subject of exclusivity, *Poche v. Avondale Shipyards, Inc.,* 339 So.2d 1212 (La.1976). This case held the Federal Act was not exclusive.

■ The decisions hold that Federal regulation of a field of commerce should not be deemed to divest state regulatory power unless (1) the nature of the regulated matter permits no other conclusion or (2) that the Congress has unmistakenly so ordained. *Askew v. American Waterways Operators,* 411 U.S. 325, 93 S.Ct. 1950, 36 L.Ed.2d 280 (1973); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

In *Kelly v. Washington,* 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3 (1937), the court stated: "The principle is thoroughly established that the exercise by the State of its police power, which would be valid if not superseded by Federal action, is superseded only where the repugnance or conflict [between the State and Federal laws] is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.'" 302 U.S. at 10, 58 S.Ct. at 92 (citations omitted).

Even though, through amendments and case law, the coverage of the Federal Act has been extended, at the same time virtually all injuries on the water have also been held to be covered by the state acts. *Baskin v. Industrial Accident Commission of the State of California,* 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 (1949); *Bethlehem Steel Co. v. Moore,* 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948); *Hahn v. Ross Island Sand & Gravel Co.,* 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959); *Richard v. Lake Charles Stevedores,* 95 So.2d 830 (La. App.1957), cert. denied 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529 (1958); *De Graw v. Todd Shipyards Co.,* 134 N.J.L. 315, 47 A.2d 338 (1946), cert. denied 329 U.S. 759, 67 S.Ct. 113, 91 L.Ed. 655 (1946); *Behrle v. London Guarantee & Accident Co.,* 76 R.I. 106, 68 A.2d 63 (1949), cert. denied 339 U.S. 928, 70 S.Ct. 627, 94 L.Ed. 1349 (1950).

■ The fact that Congress did not in this Act preclude operation of State Compensation Law is persuasive. It (The Congress) certainly has expressly done so in other acts. See the Defense Base Act, *Sect. 1(c), 42 U.S.C. Sect. 1651(c); Sect. 2(c)* of the Non-Appropriated Fund Instrumentalities Act, *5 U.S.C., Sect. 8173;* War Hazards Compensation Act, *Sect. 105(a), 42 U.S.C. Sect. 1705(a).* Surely when Congress enacted the 1972 Amendments above set out, if it had wished to completely divest the State Acts of jurisdiction, it would have so expressly stated.

Before the 1972 Amendments, the State Compensation Acts and the L.H.W.C.A. were concurrent in their jurisdiction. *Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). See also, *Davis v. Department of Labor & Industries of State of Washington,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), and *Avondale Marine Ways, Inc. v. Henderson,* 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77 (1953). Of this latter case, the court in *Calbeck,* supra, said at 370 U.S. 129, 82 S.Ct. 1204:

"Since a marine railway was considered to be a 'dry dock' the injury satisfied § 3(a)'s requirement that it occur 'upon . . . navigable waters' . . . . *At the same time, since the injury did, in a physical sense, occur on land, there is little doubt that a state compensation act could validly have been applied to it. See State Industrial Com. v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933, 25 A.L.R. 1013, 21 N.C.C.A. 862."* (Emphasis supplied)

In *Calbeck,* supra, the contention was made that acceptance of compensation under the Louisiana statute was an election of remedies which bars prosecution of a claim under L.H.W.C.A. The court rejected this contention and expressly approved the Deputy Commissioner's (under L.H.W.C.A.) act

in crediting the full amount of all payments under the Louisiana act against the L.H.W.C.A. award to make impossible "impermissible double recovery" (370 U.S. 131, 63 S.Ct. 225).

The purpose of the 1972 Amendments was to extend the coverage, and the uniformity desired was to cover qualified employees beyond the water's edge. See *Caputo,* supra.

The reason for the change brought about by the amendments is said by Professor Arthur Larson to be *money.*[1]

By 1971, there were eleven maritime states with higher benefits than the L.H.W.C.A. "The traffic was made up mostly of claimants trying to avoid the Federal act and claim under a State act." (Larson at 290). In 1972, Congress more than doubled the benefits under L.H.W.C.A.; by 1975, only Alaska had higher benefits. Extension of the coverage by the 1972 Amendments was invited by the U.S. Supreme Court in *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), saying: ". . . if denying federal remedies to longshoremen injured on land is intolerable, Congress has ample power under Arts. I and III of the Constitution to enact a suitable solution" (404 U.S. at 216, 92 S.Ct. at 426). ". . . the denial indeed did become intolerable when the federal benefits were more than doubled." (Larson, supra, at 292).

In *Weyerhaeuser Co. v. Gilmore,* 528 F.2d 957 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976), quoted in Larson, supra, at 294, the court stated:

> "We join in the observation of the Law Judge that the intent of Congress in extending the Act was not to 'open the doors' to all employees, but to minimize the adverse effect of a shoreside location or situs when a maritime employee is injured." (Id. at 961)

Professor Larson concludes his article with these words at 342–344:

"There remains the question: What if anything did the 1972 Amendments do to change the law as to 'twilight zone' and concurrent jurisdiction doctrines? The answer seems to be: factually, a great deal; legally, not much. . . . When the concurrent or successive jurisdiction question takes the form of a state award followed by a federal award, there would thus be no problem. But suppose a borderline worker in Alaska wants to escape from the Longshoremen's Act into the higher paying Alaska act. The case might first arise as a twilight zone example. For reasons just sketched, a holding below in favor of state coverage might well be left undisturbed. But suppose a Longshoremen's Act award had already been made. The main ground of the leading pre-1972 case allowing supplemental state compensation, *Hansen v. Perth Amboy Dry Dock Co.,*[2] was not the 'absence of state power clause' but the emergence of the 'valid state interest' test. This main ground remained unaffected by the 1972 Amendments. Nor did the addition of the 'maritime employment' test, as just noted, raise any new constitutional problems.

"*As a matter of federal preemption, the courts would probably uphold the application of the Alaska act as merely supplementing the federal act, not conflicting with it. The purpose of the federal act was to guarantee a federal remedy of a certain minimum size. . . .*

"To invoke the supremacy clause, federal interest should be found 'so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'

"In view of the background of pre-1972 concurrent and supplementary coverage cases, in view of the creation by Congress of large new areas of uncertainty of coverage putting workers to the possible

1. "The Conflict Problem Between the Longshoremen's Act and State Workmen's Compensation Acts Under the 1972 Amendments," 14 Hous.L.Rev. 287 (1977).

2. 48 N.J. 389, 226 A.2d 4 (1967).

hazard of wrong initial choices, and in view of the failure of Congress by express language in the amendments to pre-empt the field as against any possible competing state act, it seems likely that supplementary awards would be upheld even when the federal award had come first." (Emphasis added)

In *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), (quoted on p. 344 of Larson) the court said:

"Congress legislated here in a field which the states have traditionally occupied [citation omitted.] So we start with the assumption that the . . . powers of the states were not meant to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

That this attitude still prevails in the U.S. Supreme Court is attested by these words handed down by the Court since the 1972 Amendments: [3]

"While Congress has extended admiralty jurisdiction beyond the boundaries contemplated by the Framers, it hardly follows from the constitutionality of that extension that we must sanctify the federal courts with exclusive jurisdiction to the exclusion of powers traditionally within the competence of the States." (411 U.S. 341, 93 S.Ct. 1600.)

Therefore, since jurisdiction was not exclusive before the 1972 Amendments, we see nothing in the Amendments to justify or support T.E.I.A.'s contention that they (the 1972 Amendments) have divested the Texas Act of jurisdiction.

■ As to the argument that concurrent jurisdiction will result in double recovery, when the State award comes first *Calbeck,* supra, has removed that fear. And, we here and now hold that should plaintiff below, Tom Johnson, recover any award under the Texas Act, the entire amount awarded under L.H.W.C.A. shall be deducted from that award.

That Bethlehem is a self-insurer under L.H.W.C.A. and pays premiums to T.E.I.A. under the State Act presents no real problem, for under either scheme the employer pays the bill, depending on its injury record.

Appellant's second point is sustained; the order of the trial court is reversed, and the case is remanded for trial.

REVERSED and REMANDED.

KEITH, Justice, concurring and dissenting.

This is a most unusual case.

Plaintiff's employer determined that he was an employee within the meaning of *§ 902(3),* Longshoremen's and Harbor Workers' Compensation Act [*33 U.S.C.A. §§ 901–50 (Supp.1977)* amending portions of *33 U.S.C.A. §§ 901–50 (1970)*], hereinafter "LHWCA"; the plaintiff agreed in this determination by accepting some $3,000 from Bethlehem in payment of benefits under LHWCA; and, now this court has agreed that the parties made the correct determination of coverage: Plaintiff was, indeed, covered as a beneficiary under LHWCA when he was injured. I concur in the first section of the opinion so holding but note my concurrence in a more simplified manner: Plaintiff satisfied both the "status" and "situs" tests of eligibility for compensation. See Mr. Justice Marshall's comments found in *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). "Status" is discussed in part III of the opinion (432 U.S. at 265, 97 S.Ct. at 2358, 53 L.Ed.2d at 334), and "situs" is discussed in part IV (id., at 279, 97 S.Ct. at 2365, 53 L.Ed.2d at 342). I do not attempt to improve upon the language used by a unanimous court.

My disagreement with the majority is in the second facet of the opinion. I would hold that federal coverage is exclusive and that there is no longer an area of concurrent jurisdiction in the field of maritime

3. *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973).

employment; that when Congress extended its admitted jurisdiction to include a shore-based employee such as plaintiff, it removed potential state court jurisdiction over such an employee.

But, first to the unusual nature of the case. Plaintiff has invoked the jurisdiction of the state district court to collect the weekly compensation payments which he claims are due by reason of his injury. In so doing, to paraphrase one of the writers on the subject,[1] he walked out of a $318.38 act [LHWCA] into a $70 act [Texas]. I will comment upon possible motivation later. To say the least, this is a most unusual move by a claimant of money benefits.

The only case which discussed the specific question now under consideration is *Poche v. Avondale Shipyards, Inc.,* 339 So.2d 1212 (La.1976), which, although favorable to the position of the majority, is disposed of in a single sentence.[2]

I have given careful consideration to this decision in our neighboring state but am not persuaded that we should follow the holding. Instead, I adopt this language found in defendant's brief:

"The only case cited by the Appellant in support of his position, *Poche v. Avondale Shipyards, Inc.,* 339 So.2d 1212 (La. 1976) begs the question and totally fails to analyze the changes brought about by the 1972 Amendments. Rather the Louisiana Court conducts a detailed analysis of pre-1972 opinions where pre-emption was not at issue by the very language of the Act. The pre-1972 cases were put into their proper perspective by the United States Court of Appeals for the Ninth Circuit when it stated:

" 'We relegate those decisions to limbo because it is obvious to us that the 1972 amendments radically changed the basis for an employee's entitlement to federal compensation.' *Weyerhaeuser Company v. Gilmore,* 528 F.2d 957, 960 (1976)." [3]

I turn now to an analysis of the coverage question, noting that *before* the 1972 amendments to LHWCA, § 903(a) read:

"Compensation shall be payable under this chapter . . . but only . . . if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

This language in the earlier Act which specifically did not preempt valid state coverage, gave rise to the procedural dilemma which plagued the courts for nearly a half century.[4] Justice Marshall spoke to the problem in *Caputo,* supra, saying:

"Congress' initial apprehension of the difficulties inherent in the existence of two compensation systems for injuries sustained by amphibious workers proved to be well-founded. The courts spent the next 45 years trying to ascertain the respective spheres of coverage of the state and federal systems. As one commentator described, 'the relationship between [LHWCA] and the otherwise applicable State Compensation Act [was] shrouded in impenetrable confusion.' G. Gilmore and C. Black, The Law of Admiralty, 409 (2d ed. 1975) [Gilmore]." (432 U.S. 259, 97 S.Ct. at 2354, 53 L.Ed.2d at 330)

---

1. A. Larson, "The Conflicts Problem Between the Longshoremen's Act and State Workmen's Compensation Acts Under the 1972 Amendments", 14 Houston L.Rev. 287, 291 (1977).

2. *Poche* reached the Supreme Court of the United States sub nom., *Territo v. Poche,* and the appeal was dismissed on October 3, 1977. —— U.S. ——, 98 S.Ct. 31, 54 L.Ed.2d 60.

3. The language from *Gilmore* may be applied, very aptly, to the cases cited by the majority. I am not persuaded by the majority's reliance upon *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d

248 (1963). As the Supreme Court noted: "[T]he maturity of avocados is a subject matter of the kind this Court has traditionally regarded as properly within the scope of state superintendence." (373 U.S. 144, 83 S.Ct. 1218, 10 L.Ed.2d 258) The exact opposite is true when we deal with admiralty and maritime jurisdiction.

4. See *Larson,* supra fn. 1. Professor Larson's discussion of the "seven phases" of the constantly changing approaches to the problem is both concise and accurate.

Having sustained plaintiff's contention, the majority now returns to the same "impenetrable confusion" which preceded the congressional effort to fashion a single and all-inclusive system covering all workers upon the waterfront engaged in maritime employment. One of the reasons advanced by the legislative sponsors was alluded to in *Caputo* where the Court quoted extensively from the reports containing the legislative enactment of the 1972 amendments, noting the disparity of benefits payable under state and federal acts and the inadequacy of state benefit payments. Id. .at 261, 97 S.Ct. 2356, 53 L.Ed.2d at 332.[5]

Primarily, the confusion which existed before the Congress acted in 1972 was caused by the judicially created theory that LHWCA was supplementary in nature. The concept was explained in *Stockman v. John T. Clark & Son of Boston,* 539 F.2d 264, 270 (1st Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977):

> "Thus before the [1972] amendments, the [federal] Act was regarded as a rather limited supplement to state workmen's compensation laws, designed not to supersede or improve upon those laws but to fill a gap which the states were without jurisdiction to fill."

Speaking of the original LHWCA adopted in 1927, Mr. Justice Marshall noted in *Caputo,* supra, that "it was designed simply to be a gapfiller—to fill the void created by the inability of the States to remedy injuries on navigable waters." (432 U.S. at 258, 97 S.Ct. at 2354, 53 L.Ed.2d at 329–330) In *Nacirema Operating Co., Inc. v.*

*Johnson,* 396 U.S. 212, 223–24, 90 S.Ct. 347, 354, 24 L.Ed.2d 371, 380 (1969), the Court noted that Congress, not the courts, could move "the line" separating the employees covered by the state and federal acts—and, as said in *Caputo,* supra, "In 1972, Congress moved the line." (432 U.S. at 260, 97 S.Ct. at 2355, 53 L.Ed.2d at 331) It is inconceivable that Congress intended to perpetuate the procedural Serbonian bog then in existence.

Plaintiff's contention, simply stated, is that the concept is now reversed: the State Act is supplementary to LHWCA; or, from a practical standpoint, he can collect under the Federal Act, supplement it under the State Act, and then return for more compensation under the Federal Act. The result now reached by the majority is not concurrent jurisdiction—it is state supplemental jurisdiction.[6] I paraphrase language from *Nacirema,* supra, used in a different context: I "refuse to impute to Congress the intent of burdening the administration of compensation by perpetuating such confusion." (396 U.S. at 221, 90 S.Ct. at 352, 24 L.Ed.2d at 379)

In order to achieve this result, it is necessary for plaintiff to excise from the Act the provisions of § 905, reading:

> "The liability of an employer prescribed in section 904 of this title shall be *exclusive* and in place of all other liability of such *employer to the employee . . .*" (emphasis supplied)

Plaintiff, covered by the Federal Act by his self-insured employer, now claims that he has a supplemental claim against his employer's State Act insurer.[7] He has yet

---

**5.** Benefits under the acts of the several maritime states varied from Texas and Louisiana with $49 weekly benefits to $112.50 in Hawaii. House Report No. 92–1441, *1972 U.S.Code Cong. & Admin.News, pp. 4698, 4707.*

**6.** In *Gilmore & Black, The Law of Admiralty § 6–51, p. 354 (1957),* considering dual but successive claims during the era of the "twilight zone", the authors say: "Resort to a State Act after receipt of benefits under the Longshoremen's Act may present problems of a different order. Larson [2 *Larson, Workmen's Compensation § 89.52 (1952)*] suggests that in

such a case the supplemental recovery should be denied on a 'federal supremacy' theory."

**7.** Had plaintiff's employer chosen not to become a subscriber under the Texas Act, plaintiff would have had a cause of action against his employer for negligence proximately causing his injury. *Tex.Rev.Civ.Stat.Ann. art. 8306, § 1 (1967)*; yet, since he was an employee covered under the terms of LHWCA, his exclusive remedy for an injury sustained in the course of his employment was under the terms of the Federal Act. *33 U.S.C.A. § 905 (Supp. 1977).*

to explain why his exclusive claim under the Federal Act has been lost.

In *Dravo Corp. v. Maxin*, 545 F.2d 374, 379 (3rd Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977), the Court reviewed only a few of the decisions of the United States Supreme Court setting out the supremacy rule as applied in admiralty and maritime cases, noting that the Congress "has paramount power to determine the maritime law which shall prevail throughout the country." It exercised such power in the 1972 amendments and stated its intention in the legislative history accompanying the enactment:

> " 'The intent of the Committee is to permit *a uniform compensation system* to apply to employees who would otherwise be covered by this Act for part of their activity.' " [*Caputo,* supra, 432 U.S. 266, 97 S.Ct. 2358, 53 L.Ed.2d 334, fn. 27]

We need no citation of authority to support the proposition that the laws of the United States made pursuant to the Constitution of the United States are supreme under the provisions of *Art. VI, Cl. 2* thereof. Indeed, it has been held that there was a valid preemption of state action if state legislation violated any one of several applicable tests, including: "Or the state policy may produce a result inconsistent with the objective of the federal statute." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947).

Equality in benefits due the injured workman cannot be achieved through the concurrent operation of state acts in the field staked out by the Congress. The benefits payable to the injured workman in Texas are much lower than those provided under the LHWCA.[8] If there is concurrent jurisdiction in the state court, as plaintiff contends, it must be concurrent when invoked by the employer or his carrier as well as when invoked by the claimant/workman. Jurisdiction over the subject matter exists only by operation of law and cannot be conferred by consent or waiver. *Federal Underwriters Exchange v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943); *Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex.1975).

Having held that the employee may proceed under the State Act (to collect a maximum of $70 per week), I suggest that the majority has held that the insurance carrier of the employer has a concomitant right to proceed in that court and avoid paying plaintiff a maximum of $318.38[9] per week under LHWCA. I do not attribute to a Congress, seeking uniformity in benefits payable to waterfront workmen, any such intention when it adopted the 1972 amendments to LHWCA; yet, that is the result of today's opinion.

The Texas Workers' Compensation Act is, basically, a single-shot claim or cause of action with little, if any, administrative supervision. On the other hand, the Federal Act is virtually a cradle-to-grave act once an injury triggers its application.

Thus, I am led to the conclusion that the 1972 amendments have finally ended the long standing jurisdictional problem in this area of the law. I conclude that plaintiff's claim for compensation was one exclusively under the Federal Act and that the trial court properly decided that it had no jurisdiction over the claim under the State Act. This court so held in *Lisenby v. Texas Employers' Insurance Association*, 487 S.W.2d 366 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.), and should do so again.[10] See

8. Compare *33 U.S.C.A. § 906 (Supp.1977)* with *Tex.Rev.Civ.Stat.Ann.* art. 8306, § 10, as modified by *art. 8306, § 29 (Supp.1977)*, as amended by *Texas Session Laws 1977, ch. 470, at 1221.*

9. See *4 Larson, Workmen's Compensation Law § 89.27, p. 16–180 (1976).*

10. *Lisenby,* by this court and only a few years old, is not mentioned by the majority. The trial judge in *Lisenby* was our new associate, Justice Clayton, and this court was unanimous in

upholding his dismissal for want of jurisdiction in the trial court.

The application for the writ of error in *Lisenby* was "refused, no reversible error." An examination of the application on file in this court reveals that while divided into three points, only the single jurisdictional question was presented.

Under such circumstances, I suggest the effect of the "n. r. e." notation was to approve the *holding*—no jurisdiction in the trial

also *Warner v. Travelers Insurance Company*, 332 S.W.2d 789, 795 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.).

Admittedly, *Lisenby* and *Warner* were decided before the 1972 amendments to the Federal Act; but they enunciate a principle of law which is still applicable: Federal jurisdiction in the area of maritime employment, when it attaches, is exclusive.

Unfortunately, the majority fails to advise the parties how a double recovery can be avoided. At least one state court has rejected the so-called "double recovery." See *Texas Employers' Insurance Association v. Chappell*, 486 S.W.2d 818 (Tex.Civ.App.—Corpus Christi 1972), reversed in part on other grounds but undisturbed as to the holding under consideration, 494 S.W.2d 159 (Tex.1973).[11]

The right of set off under the Texas Act is very doubtful. It was denied in *Texas Indemnity Ins. Co. v. Arant*, 171 S.W.2d 915, 920 (Tex.Civ.App.—Eastland 1943, writ ref'd w. o. m.). The Austin court has denied offset in at least two cases where the city was a self-insurer: *City of Austin v. Clendennen*, 323 S.W.2d 158 (Tex.Civ.App.—Austin 1959, writ ref'd n. r. e.), and *City of Austin v. Webster*, 424 S.W.2d 720, 723 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). Two of the foregoing cases were cited in *Travelers Insurance Company v. Walkovak*, 390 S.W.2d 75, 78 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.), which reached the same result.

Then, too, it must be recognized that compensation paid under the State Act is exempt from "garnishment, attachment, judgment and all other suits or claims" and is not assignable. *Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (1967)*. Payments made by a third party, *even under a mistake of fact,*

may not be recovered from money due a claimant under the Act. *Lively v. Blue Cross Hospital Service, Inc.*, 488 S.W.2d 474 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.). Indeed, as pointed out by Chief Justice McCloud in *Lively*, supra, it has been held that an insurer who mistakenly paid workmen's compensation to an injured workman had no right to intervene in a suit wherein the workman was seeking to recover benefits from another insurer for the same period of time for which he had been paid by intervenor. Id. at 475.

In short, I have not been cited to any case which would permit Bethlehem to recoup its payments made under the Federal Act in any suit by plaintiff to recover additional benefits under the State Act, nor have I found any such authority in my own research.

Should TEIA seek to interpose, even as a partial defense in plaintiff's suit in the state courts to recover compensation for the same weeks for which he had been paid by Bethlehem, it is extremely doubtful if such a defense would be tenable. *Lively*, supra. Indeed, it might be that Bethlehem would be considered to be a "volunteer."

Thus, if the double recovery is to be prevented, it must be at a time when plaintiff resumes his efforts to recover benefits under LHWCA after exhaustion of the State benefits. The majority disposes of this serious question with alarming simplicity:

"As to the argument that concurrent jurisdiction will result in double recovery, when the State award comes first *Calbeck*, supra, has removed that fear. And, *we here and now hold that should plaintiff below, Tom Johnson, recover any award under the Texas Act, the entire amount awarded under L.H.W.C.A. shall*

---

court—and was an expression by the Supreme Court of its failure to be satisfied that our opinion *"in all respects* has correctly declared the law." *Tex.R.Civ.P. 483*. See also F. Wilson, "Hints on Precedent Evaluation", *24 Tex. B.J. 1037, 1090 (1961)*.

11. The *Chappell* court summarized its own holding in the case of *City of Corpus Christi v.*

*Herschbach*, 536 S.W.2d 653, 657 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.): "[T]his Court has in the past rejected the argument that the receipt of benefits under two compensation statutes would result in a double recovery, contrary to the intention of the Texas Workmen's Compensation Act."

*be deducted from that award."* (emphasis added) [12]

The majority and counsel have been equally reticent in pointing to any authority under LHWCA which would permit Bethlehem to offset payments made by TEIA under the State Act against additional claims; or, for that matter, authority which would permit TEIA to recover under LHWCA for payments it made under the State Act.

I note, in passing, that LHWCA also has an exemption of benefits from claims of creditors [*33 U.S.C.A. § 916 (1970)*] but I have found no cases which discuss the question. It is easy for the majority to speak of a denial of a double recovery; but it appears that an effective denial of such a recovery is difficult, if not impossible. One thing is certain: the *means* of accomplishment are not readily apparent.[13]

I now return to the possible motivation of a plaintiff (or his counsel) to seek compensation under the State Act for injuries received while covered by LHWCA. In this analysis of motivation, I specially disavow any assumption that a more favorable factual determination may be had in one forum as opposed to the other. Such an *assumption* (absent a strong factual base in the record) would be abhorrent to our system of administration of justice. Certainly, as demonstrated earlier in the analysis of the Acts, the injured workman may recover under the Texas Act less than a fourth of the weekly benefits to which he would be entitled under LHWCA. To encourage the injured workman to "walk" (see text accompanying fn. 9, supra) from one act to the other, there must be some strong and persuasive reason. I speculate that it possibly may be attributable to two concurrent factors: (a) the prevalent and widespread practice [of which I take judicial notice] of lump-sum settlement agreement being concluded between the compensation carrier and the injured workmen under the Texas practice, even when the claim is for temporary partial incapacity; and (b) the difference in the method of affixing (and the amount of) the fees of the injured workman's counsel. As to the first, the attractiveness of a lump sum payment to the injured workman may well outweigh the advantages of a much larger sum dribbled out over a long period of time.

As to the second factor, an examination of the two Acts reveals a vast difference in the treatment of such fees. Whereas, under the State Act, an award of one-fourth of the benefits payable is practically standard since authorized by the Act [*Art. 8306, §§ 7c and 7d (Supp.1977)*], under LHWCA fees may be charged against the employer or insurer or fixed by the Board or court under other circumstances [*§ 928(a)–(c) (Supp.1977)*].

While this is, perhaps, one explanation of the strange desire to "walk", I am unwilling to ascribe such motives to able counsel for the plaintiff in this cause who bears an outstanding reputation for ability, probity, and adherence to the highest standards of professional ethics. Thus, while I have examined the briefs, listened attentively to the arguments of counsel, and studied the law applicable to the case, I have not been pointed to any sound reason for this court to create or to perpetuate this new "twilight zone" with its accompanying problems.

Moreover, I am concerned over the possible harm which will result from an application of the rule announced by the majority—harm to the employer *and* to the workman. There is a vast difference in the

---

**12.** I construe the phrase "the entire amount awarded under L.H.W.C.A. shall be deducted from that award" to mean that Johnson's recovery in the instant suit will be credited with the amount Johnson has received from Bethlehem under LHWCA for injuries received in the accident made the basis of this suit.

If this construction is correct, then this holding is in conflict with the cases cited earlier.

See discussion of *Chappell*, supra, and the authorities cited incident to fn. 11, supra.

**13.** Cf. *Rockport Yacht & Supply Co., Inc. v. Hollis,* 371 F. Supp. 1229, 1232 (S.D.Tex.1973), where the Court, without indication of the procedure, noted that any recovery under state law must be credited against the LHWCA award "so as to preclude a double recovery."

State and Federal Acts. Judge Brown in *Flowers v. Travelers Insurance Company,* 258 F.2d 220, 225 (5th Cir. 1958), noted that LHWCA is "almost self-executing", and continued:

> "The heart of any such system is the mandatory report of an injury by the employer within 10 days under § 930(a). A failure to file subjects the employer to the sanctions of civil penalties, § 930(e)." [14]

It is an understatement to assert that the Texas Act is anything but "self-executing."

Should the employer elect to consider the injured workman subject to the State Act—and not to pay him under LHWCA—grave consequences could result. Obviously, there is considerable exposure of the employer to financial harm should he guess—or proceed—incorrectly under the two acts of "concurrent" jurisdiction as determined by the majority.

On the other hand, the employee, pursuing his "concurrent" remedy in the state court may well do so at his peril. If it be determined finally that the federal remedy is exclusive, those who have sought and procured state benefits may well find themselves without *any* remedy.

As I noted earlier, if the Texas courts have jurisdiction of the claim of an injured employee such as our plaintiff under the State Act—at the suit of the employee—such courts also have jurisdiction of a suit by the employer under the same circumstances. If the employer asserted the "concurrent jurisdiction" theory now announced by the majority, plaintiff would be paid only a fraction of what would be due him under the Federal Act. Such a result, if upheld, would be a financial catastrophe to the injured workman. Moreover, for a state court to take jurisdiction of such a claim at the instance of an employer would constitute an impermissible interference with the federal compensation system; such action would destroy the goal of uniformity sought by the Congress; and, such an at-

tempt would likely meet with judicial disapproval in both the state and federal judicial systems. Yet, the majority creates a one-way street for the employee which may not be used by the employer.

As much as I approve the Texas de novo procedure with a jury determining the fact issues as contrasted with the bureaucratic substantial evidence procedure embodied in the Federal Act, I see nothing but confusion facing Texas waterfront workmen and their employers. The newly espoused "concurrent jurisdictional" or "supplemental compensation" theories of the majority will, in my opinion, inevitably lead to confusion in what could be a simple and conclusive procedural area.

I respectfully dissent from the reversal.

---

**14.** Notice of injury or death must now be given within thirty days under the 1972 amendment. *33 U.S.C.A. § 912 (Supp.1977).*